## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**STRUCTURAL IRON WORKERS LOCAL UNION NO. 1 PENSION TRUST FUND,**

Plaintiff,

v.

**HARRIS DAVIS REBAR, LLC,**

Defendant.

CASE No. 1:17cv04922

JUDGE: Hon. John Z. Lee

MAG. Judge: Hon. Mary M. Rowland

## ANSWER and AFFIRMATIVE DEFENSES

NOW COMES the Defendant Harris Davis Rebar, LLC ("HDR" or "Defendant"), by and through its attorneys, to file its Answer and Affirmative Defenses to Plaintiff Structural Iron Workers Local Union No.1 Pension Trust Fund's (the "Fund") Complaint as follows:

## JURISDICTION AND VENUE

**1.** This action arises under Sections 502 and 515 of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA") (20 U.S.C. §§ 1132 and 1145) and under Section 4301 of the Multiemployer Pension Plan Amendment Act of 1980 (29 U.S.C. § 1451). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132, 1145, and 1451(c).

**ANSWER:** HDR admits that the Fund's claims purport to arise under Section 502 and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and under Section 4301 of the Multiemployer Pension Plan Amendment Act of 1980, 29 U.S.C. § 1451. HDR admits that this Court has held that it has jurisdiction over the subject matter of this action. Except as expressly admitted, HDR denies the remaining allegations in this paragraph.

2.     Venue is proper in this Court pursuant to 29 U.S.C. §§ 1132(e)(2) and 1451(d) in that the PENSION FUND is administered at 7700 Industrial Drive, Forest Park, Illinois 60130, and pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Northern District of Illinois, Eastern Division.

**ANSWER:**   HDR admits that venue is appropriate in this Court, that the Fund is administered at 7700 Industrial Drive, Forest Park, Illinois 60130, and that the Fund purports that a substantial part of the events and omissions that give rise to the Fund's claims occurred in the Northern District of Illinois, Eastern District. Except as expressly admitted, HDR denies the remaining allegations in this paragraph.

## PARTIES

3.     The PENSION FUND is a multiemployer defined benefit pension fund jointly administered pursuant to 29 U.S.C. §186(c)(5) and as defined under 29 U.S.C. §1002(35).

**ANSWER:**   HDR admits the allegations in this paragraph.

4.     The Defendant HARRIS DAVIS is a Delaware limited liability corporation which maintains its principal place of business in Bellevue, Nebraska.

**ANSWER:**   HDR admits the allegations in this paragraph.

## FACTS COMMON TO ALL COUNTS

5.     Davis J.D. Steel, LLC (now known as FKADJDS, LLC) ("Davis JD") began operations in 2005 to provide rebar placement services in all jurisdictions east of the Rocky Mountains in the continental United States.

**ANSWER:**   HDR lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and therefore denies the allegations in this paragraph.

6.     Davis JD's ownership was and is composed as follows:

| Member: | Ownership Interest: |
|---|---|
| Davis Rebar | 50% |
| J.D. Steel | 50% |

**ANSWER:** HDR lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and therefore denies the allegations in this paragraph.

7. The principals of Davis JD formed Old Chicago Steel, LLC ("Old Chicago") in 2010 for the sole purpose of avoiding Illinois workers' compensation laws.

**ANSWER:** HDR lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and therefore denies the allegations in this paragraph.

8. Old Chicago's ownership was and is composed as follows:

| Member: | Ownership Interest: |
|---|---|
| Davis Rebar | 40% |
| J.D. Steel | 45% |
| Roger Strubel | 15% |

**ANSWER:** HDR lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and therefore denies the allegations in this paragraph.

9. Other than the name, the operations of Davis JD and Old Chicago were one in the same.

**ANSWER:** HDR denies the allegations in this paragraph.

10. For all times relevant, Davis JD was under common control with Old Chicago and, therefore, was a member of the controlled group with Old Chicago as defined by 29 U.S.C. § 1301(b)(1) (hereinafter Old Chicago and Davis JD shall collectively be referred to as "Old Chicago/Davis JD").

**ANSWER:** This allegation states a conclusion of law to which no answer is required;

3

to the extent an answer is required, HDR lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and therefore denies the allegations in this paragraph.

11.    Old Chicago/Davis JD became signatory to a Collective Bargaining Agreement ("CBA") with the Structural Iron Workers Local Union No. 1 ("Local 1").   (Collective Bargaining Agreement is attached as Exhibit 1); (Compliance Agreement is attached as Exhibit 2).

**ANSWER:**    HDR denies the allegations in this paragraph, and further notes that the referenced CBA is the best evidence of its own content.

12.    Pursuant to the CBA, Old Chicago/Davis JD was bound to the Agreement and Declaration of Trust which created the PENSION FUND ("Trust Agreement").

**ANSWER:**    HDR denies the allegations in this paragraph, and further notes that the referenced CBA is the best evidence of its own content.

13.    Pursuant to the CBA and Trust Agreement, Old Chicago/Davis JD was required to submit monthly contributions to the PENSION FUND on behalf of its employees working within the Trade and Territorial Jurisdiction of Local 1. (Exhibit 1).

**ANSWER:**    HDR denies the allegations in this paragraph, and further notes that the referenced CBA and Trust Agreement are the best evidence of their own content.

14.    In November 2012, Old Chicago/Davis JD closed on the sale of their assets to HARRIS DAVIS (hereinafter the asset sale shall be referred to as the "Asset Sale").

**ANSWER:**    HDR denies the allegations in this paragraph.

15.    Following the Asset Sale, Old Chicago/Davis JD ceased performing work in the jurisdiction of Local 1.

**ANSWER:**     HDR denies the allegations in this paragraph.

16.     Part and parcel to the Asset Sale was the negotiation of the National Reinforcing Steel Agreement ("NRSA") between HARRIS DAVIS and the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers AFL-CIO ("International Union"). (NRSA is attached as Exhibit 3).

**ANSWER:**     HDR denies the allegations in this paragraph.

17.     The NRSA was specifically structured by HARRIS DAVIS in order to avoid any obligation to contribute to any multiemployer defined benefit pension fund, including but not limited to the PENSION FUND.

**ANSWER:**     HDR denies the allegations in this paragraph.

18.     In 2014, HARRIS DAVIS continued/resumed the work of Old Chicago/Davis JD in the continental United States, including in the Trade and Territorial Jurisdiction of Local 1.

**ANSWER:**     HDR denies the allegations in this paragraph.

19.     However, when HARRIS DAVIS performed work in the Trade and Territorial Jurisdiction of Local 1, it did not have an obligation to contribute to the PENSION FUND.

**ANSWER:**     HDR admits that it does not, and has never had, any obligation to contribute to the Fund. Except as expressly admitted, HDR denies the remaining allegations in this paragraph.

20.     On November 7, 2014, the PENSION FUND sent Old Chicago/Davis JD a Second Amended Notice and Demand for Withdrawal Liability in the amount of $212,169.00 for the calendar year ending December 31, 2014 as Old Chicago/Davis JD's sale of assets to

HARRIS DAVIS was a transaction with a principal purpose of avoiding withdrawal liability under 29 U.S.C. § 1392. (Second Amended Notice and Demand is attached as Exhibit 4).

**ANSWER:** HDR admits that the Fund sent a revised demand for withdrawal liability to Old Chicago and Davis JD dated November 7, 2014, and that this document is the best evidence of the Fund's claims against those entities and, in HDR's case, the Fund's decision to abandon its claims against HDR. Except as expressly admitted, HDR denies the remaining allegations in this paragraph.

21.    In April 2015, Old Chicago/Davis JD initiated arbitration on the issue of whether Old Chicago/Davis JD acted to evade or avoid withdrawal liability under 29 U.S.C. §1392 by selling their assets to HARRIS DAVIS. The Arbitration is still currently pending and the parties are engaged in discovery.

**ANSWER:** Based on information and belief, HDR admits that Old Chicago and Davis JD initiated a withdrawal liability arbitration challenging the withdrawal liability that has been assessed against those entities. Except as expressly admitted, HDR denies the remaining allegations in this paragraph.

22.    Old Chicago/Davis JD contest that they are liable for any withdrawal liability.

**ANSWER:** Based on information and belief, HDR admits that Old Chicago and Davis JD have contested that they are liable for any withdrawal liability from the Fund. Except as expressly admitted, HDR denies the remaining allegations in this paragraph.

## COUNT I – SUCCESSOR LIABILITY

23.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-22 of this Complaint with the same force and effect as if fully set forth herein.

**ANSWER:** HDR incorporates its responses to the Fund's allegations contained in

paragraphs 1 – 22 of this Complaint.

24.     Prior to the Asset Sale, HARRIS DAVIS, through Jeff Green, had knowledge of Old Chicago/Davis JD's obligation to contribute to the PENSION FUND.

**ANSWER:**     HDR denies the allegations in this paragraph.

25.     HARRIS DAVIS and Old Chicago/Davis JD structured the Asset Sale and the NRSA specifically with the intent to avoid having an obligation to pay withdrawal liability to the PENSION FUND.

**ANSWER:**     HDR denies the allegations in this paragraph.

26.     Jeff Green was the President of Old Chicago/Davis JD prior to its cessation of operations.

**ANSWER:**     HDR denies the allegations in this paragraph,

27.     Jeff Green now serves as the President of HARRIS DAVIS.

**ANSWER:**     HDR denies the allegations in this paragraph.

28.     Jeff Green, through Davis Rebar, maintained an ownership interest in Old Chicago/Davis JD prior to its cessation of operations.

**ANSWER:**     HDR denies the allegations in this paragraph.

29.     Jeff Green maintains an ownership interest in HARRIS DAVIS.

**ANSWER:**     HDR admits the allegations in this paragraph.

30.     Roger Strubel served as the principal salesman for Old Chicago/Davis JD prior to its cessation of operations.

**ANSWER:**     HDR denies the allegations in this paragraph.

31.     For some time following the closing of the Asset Sale, Roger Strubel served as the

principal salesman for HARRIS DAVIS.

**ANSWER:** HDR denies the allegations in this paragraph.

**32.** Roger Strubel maintained a 15% profit contract with Davis JD and a 15% ownership interest in Old Chicago prior the cessation of Old Chicago/Davis JD's operations.

**ANSWER:** HDR lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and therefore denies the allegations in this paragraph.

**33.** For some time following the closing of the Asset Sale, Roger Strubel maintained an ownership interest in HARRIS DAVIS.

**ANSWER:** HDR admits that Roger Struble maintained a nine percent ownership interest in HDR from the closing of the Asset Sale until April 26, 2014. Except as expressly admitted, HDR denies the remaining allegations in this paragraph.

**34.** Old Chicago/Davis JD's principal offices were in Bellevue, Nebraska prior to its cessation of operations.

**ANSWER:** HDR denies the allegations in this paragraph.

**35.** HARRIS DAVIS's principal offices are currently in Bellevue, Nebraska.

**ANSWER:** HDR admits the allegations of this paragraph.

**36.** Brian Schifferer was employed by Old Chicago/Davis JD as a General Foreman/Field Superintendent in Local 1's Trade and Territorial Jurisdiction prior to the cessation of its operations.

**ANSWER:** HDR denies the allegations in this paragraph.

**37.** HARRIS DAVIS employed Brian Schifferer as a General Foreman/Field Superintendent in Local 1's Trade and Territorial Jurisdiction after the closing of the Asset Sale.

**ANSWER:** HDR admits that Brian Schifferer was employed by HDR and may have performed work, among other geographic locations, within Local 1's Trade and Territorial Jurisdiction after the closing of the Asset Sale. Except as expressly admitted, HDR denies the remaining allegations of this paragraph.

38. Tim Anthony was employed by Old Chicago/Davis JD as a Superintendent in Local 1's Trade and Territorial Jurisdiction prior to the cessation of its operations.

**ANSWER:** HDR denies the allegations in this paragraph.

39. HARRIS DAVIS employed Tim Anthony as a Superintendent in Local 1's Trade and Territorial Jurisdiction after the closing of the Asset Sale.

**ANSWER:** HDR admits that Tim Anthony was employed by HDR and may have performed work, among other geographic locations, within Local 1's Trade and Territorial Jurisdiction after the closing of the Asset Sale. Except as expressly admitted, HDR denies remaining allegations in this paragraph.

40. Tim Anthony continued to use the same mobile phone number for HARRIS DAVIS as he did for Old Chicago/Davis JD to communicate with customers.

**ANSWER:** HDR denies the allegations in this paragraph.

41. Following the asset sale, HARRIS DAVIS began using the equipment of Old Chicago/Davis JD to perform work, including but not limited to at least one vehicle that was used by employees working within Local 1's Trade and Territorial Jurisdiction prior the closing of the Asset Sale.

**ANSWER:** HDR denies the allegations in this paragraph.

42. Upon information and belief, many other employees of Old Chicago/Davis

JD were subsequently employed by HARRIS DAVIS.

> **ANSWER:** HDR denies the allegations in this paragraph.

**43.** Upon information and belief, HARRIS DAVIS performs work for some of the same customers that Old Chicago/Davis JD did prior to its cessation of operations.

> **ANSWER:** HDR denies the allegations in this paragraph.

**44.** Upon information and belief, HARRIS DAVIS uses the same material suppliers that were used by Old Chicago/Davis JD.

> **ANSWER:** HDR denies the allegations in this paragraph.

**45.** Old Chicago/Davis JD and HARRIS DAVIS perform the same type of work – rebar placement.

> **ANSWER:** HDR denies the allegations in this paragraph.

**46.** HARRIS DAVIS is the successor entity to Old Chicago/Davis JD and should be liable for the withdrawal liability of Old Chicago/Davis JD, plus interest and liquidated damages.

> **ANSWER:** This allegation states a conclusion of law to which no answer is required; to the extent an answer is required, HDR denies the allegations in this paragraph.

**47.** Plaintiff has complied with all conditions precedent in bringing this suit.

> **ANSWER:** HDR denies the allegations in this paragraph.

**48.** Defendant HARRIS DAVIS is obligated to pay the reasonable attorney's fees and court costs incurred by the Plaintiff pursuant to the Collective Bargaining Agreement, Trust Agreements and 29 U.S.C. §1451(e).

> **ANSWER:** HDR denies the allegations in this paragraph.

Plaintiff's WHEREFORE provision, and each of its subparts, contains allegations to which no response is required; to the extent that a response may be required, Defendant denies that the Fund is entitled to any relief whatsoever, and further denies that it has committed any unlawful or wrongful act.

## COUNT II –
## ALTER EGO LIABILITY

**49.** Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-48 of this Complaint with the same force and effect as if fully set forth herein.

**ANSWER:** HDR incorporates its responses to the Fund's allegations contained in paragraphs 1 - 48 of this Complaint.

**50.** HARRIS DAVIS and Old Chicago/Davis JD structured the Asset Sale and the NRSA specifically with the intent to avoid having an obligation to pay withdrawal liability to the PENSION FUND.

**ANSWER:** HDR denies the allegations in this paragraph.

**51.** Jeff Green was the President of Old Chicago/Davis JD prior to its cessation of operations.

**ANSWER:** HDR denies the allegations in this paragraph.

**52.** Jeff Green now serves as the President of HARRIS DAVIS.

**ANSWER:** HDR denies the allegations of this paragraph.

**53.** Jeff Green, through Davis Rebar, maintained an ownership interest in Old Chicago/Davis JD prior to its cessation of operations.

**ANSWER:** HDR denies the allegations of this paragraph.

**54.** Jeff Green maintains an ownership interest in HARRIS DAVIS.

**ANSWER:**     HDR admits the allegations in this paragraph.

55.     Roger Strubel served as the principal salesman for Old Chicago/Davis JD prior to its cessation of operations.

**ANSWER:**     HDR denies the allegations in this paragraph.

56.     For some time following the closing of the Asset Sale, Roger Strubel served as the principal salesman for HARRIS DAVIS.

**ANSWER:**     HDR denies the allegations in this paragraph.

57.     Roger Strubel maintained a 15% profit contract with Davis JD and a 15% ownership interest in Old Chicago prior the cessation of Old Chicago/Davis JD's operations.

**ANSWER:**     HDR lacks sufficient knowledge or information to admit or deny the allegations in this paragraph and therefore denies the allegations in this paragraph.

58.     For some time following the closing of the Asset Sale, Roger Strubel maintained an ownership interest in HARRIS DAVIS.

**ANSWER:**     HDR admits that Roger Struble maintained a nine percent ownership interest in HDR from the closing of the Asset Sale until April 26, 2014.  Except as expressly admitted, HDR denies the remaining allegations in this paragraph.

59.     Old Chicago/Davis JD's principal offices were in Bellevue, Nebraska prior to its cessation of operations.

**ANSWER:**     HDR denies the allegations in this paragraph.

60.     HARRIS DAVIS's principal offices are currently in Bellevue, Nebraska.

**ANSWER:**     HDR admits the allegations of this paragraph.

61.     Brian Schifferer was employed by Old Chicago/Davis JD as a General

Foreman/Field Superintendent in Local 1's Trade and Territorial Jurisdiction prior to the cessation of its operations.

**ANSWER:** HDR denies the allegations in this paragraph.

62. HARRIS DAVIS employed Brian Schifferer as a General Foreman/Field Superintendent in Local 1's Trade and Territorial Jurisdiction after the closing of the Asset Sale.

**ANSWER:** HDR admits that Brian Schifferer was employed by HDR and may have performed work, among other geographic locations, within Local 1's Trade and Territorial Jurisdiction after the closing of the Asset Sale. Except as expressly admitted, HDR denies the remaining allegations of this paragraph.

63. Tim Anthony was employed by Old Chicago/Davis JD as a Superintendent in Local 1's Trade and Territorial Jurisdiction prior to the cessation of its operations.

**ANSWER:** HDR denies the allegations in this paragraph.

64. HARRIS DAVIS employed Tim Anthony as a Superintendent in Local 1's Trade and Territorial Jurisdiction after the closing of the Asset Sale.

**ANSWER:** HDR admits that Tim Anthony was employed by HDR and may have performed work, among other geographic locations, within Local 1's Trade and Territorial Jurisdiction after the closing of the Asset Sale. Except as expressly admitted, HDR denies remaining allegations in this paragraph.

65. Tim Anthony continued to use the same mobile phone number for HARRIS DAVIS as he did for Old Chicago/Davis JD to communicate with customers.

**ANSWER:** HDR denies the allegations in this paragraph.

66. Following the asset sale, HARRIS DAVIS began using the equipment

of Old Chicago/Davis JD to perform work, including but not limited to at least one vehicle that was used by employees working within Local 1's Trade and Territorial Jurisdiction prior the closing of the Asset Sale.

**ANSWER:** HDR denies the allegations in this paragraph.

**67.** Upon information and belief, many other employees of Old Chicago/Davis JD were subsequently employed by HARRIS DAVIS.

**ANSWER:** HDR denies the allegations in this paragraph.

**68.** Upon information and belief, HARRIS DAVIS performs work for some of the same customers that Old Chicago/Davis JD did prior to its cessation of operations.

**ANSWER:** HDR denies the allegations in this paragraph.

**69.** Upon information and belief, HARRIS DAVIS uses the same material suppliers that were used by Old Chicago/Davis JD.

**ANSWER:** HDR denies the allegations in this paragraph.

**70.** The principals of HARRIS DAVIS established HARRIS DAVIS to avoid liability to the PENSION FUND.

**ANSWER:** HDR denies the allegations in this paragraph.

**71.** Allowing HARRIS DAVIS to escape liability of the withdrawal liability owed by Old Chicago/Davis JD would sanction an injustice.

**ANSWER:** HDR denies the allegations in this paragraph.

**72.** HARRIS DAVIS is the alter ego of Old Chicago/Davis JD and should be liable for the withdrawal liability of Old Chicago/Davis JD, plus interest and liquidated damages.

**ANSWER:** This allegation states a conclusion of law to which no answer is required;

to the extent an answer is required, HDR denies the allegations in this paragraph.

**73.** Plaintiff has complied with all conditions precedent in bringing this suit.

**ANSWER:** HDR denies the allegations in this paragraph.

**74.** Defendant HARRIS DAVIS is obligated to pay the reasonable attorney's fees and court costs incurred by the Plaintiff pursuant to the Collective Bargaining Agreement, Trust Agreements and 29 U.S.C. §1451(e).

**ANSWER:** HDR denies the allegations in this paragraph.

Plaintiff's WHEREFORE provision, and each of its subparts, contains allegations to which no response is required; to the extent that a response may be required, Defendant denies that the Fund is entitled to any relief whatsoever, and further denies that it has committed any unlawful or wrongful act.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

### First Affirmative Defense

The Fund's Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

The Fund issued its Second Amended Notice and Demand for Withdrawal Liability against both Old Chicago and Davis JD on November 7, 2014. The Fund waited almost three more years before filing this complaint against HDR and as such the Fund's claims for withdrawal liability should be barred on equitable grounds, including by way of example and without limitation, waiver, laches, and estoppel, and statutory grounds, including by way of example and without limitation, 29 U.S.C. § 1399(b)(1)'s requirement that the Fund assess withdrawal liability "[a]s soon as practicable after an employer's … withdrawal".

## **Third Affirmative Defense**

Old Chicago and Davis JD have already made all of the required interim payments, as required under 29 U.S.C. § 1392, to satisfy the withdrawal liability asserted against HDR such that, by way of example and without limitation, "successor" or "alter ego" liability is not available.

## **Fourth Affirmative Defense**

HDR reserves the right to raise additional affirmative defenses that may be discovered during the course of this action, and hereby fully includes by reference the allegations contained in its complaint against the Fund at Northern District of Illinois Case No. 1:17-cv-06473, at Dkt. 1.

**WHEREFORE**, HDR respectfully requests the Court grant the following relief:

1. Judgment be entered dismissing Plaintiff's Complaint on the merits and with prejudice;

2. Awarding Defendant their attorneys' fees, costs, and disbursements, as appropriate; and

3. Directing such other relief as the Court deems just and equitable.

Date:  November 13, 2018

*/s/ Michael G. Congiu*
Michael G. Congiu

Michael G. Congiu
**LITTLER MENDELSON, P.C.**
1300 IDS Center
80 South 8th Street
Minneapolis, MN  55402.2136
Telephone: 612.313.7656

321 N. Clark Street, Suite 1000
Chicago, IL 60654
312.795.3289
mcongiu@littler.com

Kevin L. Wright
Melissa Harclerode
**LITTLER MENDELSON, P.C.**
1650 Tysons Blvd., Suite 700
McLean, VA 22102
703.442.8425
klwright@littler.com
mharclerode@littler.com

**ATTORNEYS FOR DEFENDANT**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 13th day of November, 2018, a true and correct copy of the

foregoing **DEFENDANT'S ANSWER** filed with the Clerk of Court using the CM/ECF system,

which will then send a notification of such filing to the following counsel of record:

> Jeffery A. Krol (6300262)
> Joseph E. Mallon (6280529)
> (lead trial attorney)
> Matthew D. Grabell (6312929)
> Johnson & Krol, LLC
> 311 S. Wacker Drive, Suite 1050
> Chicago, IL 60606
> 312.372.8587
> jeffkrol@johnsonkrol.com
> mallon@johnsonkrol.com
> grabell@johnsonkrol.com

*/s/ Michael G. Congiu*
Michael G. Congiu
